## A96A2012. MOORE v. THE STATE.
(481 SE2d 892)

JOHNSON, Judge.

A Toombs County jury tried Tierrance S. Moore and his co-defendants, Dedrick Berry and Terrell Monroe, on charges of murder, felony murder, and armed robbery. Convicted only of armed robbery,

Moore appeals, challenging the sufficiency of the evidence and several of the trial court's rulings.

1. Moore challenges the sufficiency of the evidence supporting his armed robbery conviction. Pursuant to *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979), we review that evidence in a light most favorable to the verdict.

Moore and his co-defendants were charged in connection with the armed robbery of John Dixon's convenience store, during which Dixon was killed by a shotgun blast. In his statement to police and his testimony at trial, Moore admitted he drove co-defendants Monroe and Berry, as well as Delwin Berry and Kiendal Tootle, to the store and waited outside in the car while Delwin Berry, Dedrick Berry, and Kiendal Tootle went in. Delwin Berry, who pled guilty and testified for the prosecution, stated that the five men agreed to do a "hit" on the store and took a shotgun for that purpose. Delwin Berry testified that while Moore remained in the car, the others entered the store. Kiendal Tootle aimed the shotgun at Dixon and told him to "give it up." When Dixon tried to flee, Tootle shot and killed him. In his statement made before trial and testimony at trial, Moore stated he heard the shot and drove the men home after the robbery. He denied receiving any proceeds from the crime. Approximately 45 minutes before the attack, an independent witness saw the blue Ford Escort identified as Moore's car drive slowly past the store and stop in front while its occupants looked in the direction of the store.

This evidence supports the conviction. The testimony of Moore's accomplice, Delwin Berry, was corroborated by Moore's own statements and by the independent witness who saw the men "casing" the convenience store. See *Thurman v. State*, 207 Ga. App. 96, 97-98 (1) (427 SE2d 69) (1993). From Moore's presence, companionship, and conduct before and after the armed robbery, the jury could infer that he possessed the requisite criminal intent sufficient to support his conviction as a party to the armed robbery. *Ellis v. State*, 211 Ga. App. 605, 608 (1) (440 SE2d 235) (1994).

2. The trial court did not err by denying Moore's motion to sever his trial from that of Dedrick Berry and Terrell Monroe. A trial court's decision not to sever will be affirmed absent an abuse of discretion. *Short v. State*, 256 Ga. 165, 168 (4) (345 SE2d 340) (1986). To merit a severance in a non-death penalty case, a defendant must make a clear showing of prejudice amounting to a denial of due process. *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996). Here, the defendants were not so numerous that the jury confused the facts and law applicable to each. See *Mayfield v. State*, 220 Ga. App. 19, 20 (2) (467 SE2d 352) (1996). It is clear the jury was able to sort out the law and evidence, as it convicted Moore of armed robbery only but

convicted his co-defendants of armed robbery and felony murder. Thus, to the extent these defendants asserted antagonistic defenses, Moore has shown no resulting harm. See *Davis v. State,* 266 Ga. 801, 802 (3) (471 SE2d 191) (1996).

Moore argues that because the defendants were tried jointly, he could not cross-examine Terrell Monroe, whose statement was used against him. Moore has not shown how separate trials would have allowed him to compel Monroe's testimony. *Davis,* supra. To the extent Moore contends the introduction of Monroe's statement violated *Bruton v. United States,* 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) because it deprived him of the right to confront Monroe, that argument also fails. First, as Moore's counsel established at trial, Monroe's statement did not directly implicate Moore as having participated in planning the robbery even though it stated that he drove the car. See *Durden v. State,* 219 Ga. App. 732, 735-736 (5) (466 SE2d 641) (1995) (to violate *Bruton,* statement must *directly* implicate defendant). Furthermore, in Moore's own statement he admitted he drove the car to the store, waited outside while the other men went inside, heard a shotgun blast, and drove the men away from the scene. The statement of Dedrick Berry, who testified at trial, implicated Moore as taking an active part in the crime, as did the trial testimony of Delwin Berry, who testified Moore helped plan the crime. Thus, the admission of Monroe's statement was not error under the "interlocking confessions" exception to *Bruton,* and the trial court gave appropriate cautionary instructions limiting the jury's use of each defendant's statement to the issue of that defendant's guilt. *Freeman v. State,* 265 Ga. 709, 710-711 (1) (462 SE2d 139) (1995); *Tatum v. State,* 249 Ga. 422, 424-425 (1) (291 SE2d 701) (1982). We find no abuse of discretion in the trial court's denial of the motion to sever.

3. Moore contends the trial court erred by denying his motion for change of venue, in which he claimed pre-trial publicity and bias within the community and jury pool prevented a fair trial in Toombs County. To merit a change of venue based on these grounds, a defendant must show that a) the setting of the trial is inherently prejudicial; or b) the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. *Morrill v. State,* 216 Ga. App. 468, 470 (3) (454 SE2d 796) (1995). That decision is entrusted to the discretion of the trial judge, and his determination will be affirmed absent an abuse of discretion. Id.

(a) *Inherent Prejudice.* Although Moore presented evidence that the robbery and murder of Dixon had been widely publicized in newspapers and on television, the trial court found the coverage did not rise to the level of a "barrage" of pretrial publicity sufficient to create inherent prejudice. See *Chancey v. State,* 256 Ga. 415, 430 (5) (A)

(349 SE2d 717) (1986). As the trial court noted, many of the news accounts were published near the time of the crime, which was several months before trial. See *Gardiner v. State*, 264 Ga. 329, 333 (4) (444 SE2d 300) (1994). The trial court's review of those news materials did not reveal any extreme sensationalism. *Chancey*, supra. This pretrial publicity did not create an inherently prejudicial atmosphere in which Moore could not obtain a fair trial. See *Lemley v. State*, 258 Ga. 554, 556 (4) (372 SE2d 421) (1988).

(b) *Actual Prejudice*. Neither does the evidence demand a finding that the jury pool in Toombs County was actually prejudiced against him due to either community bias or pretrial publicity. The potential jurors were individually questioned, and although many indicated they had heard of the crime, either through the media or friends, only one member of the venire stated he had a fixed opinion regarding the guilt of the defendants. That panelist was excused for cause. Because the trial court was able to seat a full panel of jurors who could determine Moore's guilt or innocence based solely on in-court testimony and evidence, Moore has not shown the actual prejudice necessary to merit a change of venue. See *Chancey*, supra at 430-431 (5) (c); *Morrill*, supra at 471 (3).

Some prospective jurors apparently discussed the crime while waiting in the hallway prior to jury selection. However, each member of the venire who overheard that discussion denied hearing any opinion regarding the guilt of the defendants and stated the discussion would not affect his or her ability to decide the case based only on the evidence presented. Moore's remaining arguments are unsupported by the record.

4. The trial court did not err in its questioning of a prospective juror during voir dire. Moore correctly notes that one prospective juror did doubt his ability to decide the case impartially. Before the trial court asked this venireman *any* questions, however, the panelist stated he could not say whether the defendants were guilty because "I have no evidence that they were even the ones that were there." In an effort to clarify the venireman's answer, the experienced trial judge made a football analogy and asked whether, even if the prospective juror had a preexisting opinion, he could lay aside that opinion and decide the case based on the evidence alone. The trial court's question applied the proper standard. *Chancey*, supra at 425 (3) (B) (a). Moore's contention that the trial court had no authority to question the venireman or try to explain the meaning of the voir dire inquiry in layman's language is completely without merit. See id.; OCGA § 15-12-164 (b) (duty of judge to ascertain whether prospective juror is impartial).

5. The trial court did not err in its recharge on the law of parties to a crime by failing also to "include charges favorable to Appellant."

In this case, the trial court's original charge and an earlier recharge included instructions on the issues Moore raises: mere presence and association. Then, in response to a specific jury question, the court again charged the law of parties to a crime. When the jury requests additional instructions on a specific issue of law, the trial court has discretion to recharge only that issue or to reinstruct the jury completely. *Burgan v. State*, 258 Ga. 512, 514 (4) (371 SE2d 854) (1988). Here, the court's failure to repeat for a third time the additional points of law "favorable" to Moore's case was not error. See *Davis v. State*, 194 Ga. App. 902, 904-905 (3) (392 SE2d 327) (1990).

6. Moore's next enumeration of error challenges the trial court's failure to grant a new trial based on post-trial testimony of the jury foreman, an attorney who did not practice criminal law. That testimony, Moore asserts, shows the jury was confused regarding the law and indicates the foreman injected improper legal concepts into the jury's deliberation. This testimony is not admissible to impeach the jury's verdict, as it does not fall within any exception to OCGA § 17-9-41. *Gardiner*, supra at 332 (2). Therefore, this enumeration of error is without merit.

7. Finally, Moore challenges as prejudicial the trial court's admission of a photograph and a videotape showing the crime scene and the deceased's body. As Moore did not object to introduction of the photographic evidence, any alleged error is waived. See *Cox v. State*, 205 Ga. App. 375, 376 (4) (422 SE2d 68) (1992). The videotape was relevant to show the crime scene, the location of the victim's body, and the wounds caused by the shotgun blast. *Sterling v. State*, 267 Ga. 209, 214 (10) (477 SE2d 807) (1996). It was not unduly repetitious of the photograph, and the trial court did not abuse its discretion in admitting it. See *Kettman v. State*, 257 Ga. 603, 604 (2) (362 SE2d 342) (1987).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 24, 1997 — 

*Dubberly & McGovern, Bruce D. Dubberly III*, for appellant.
*Richard A. Malone, District Attorney*, for appellee.